IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| M.S. and JACQUELINE SIMCHICK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 1:05cv1476 (JCC) ) |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | ) ) ) ) |
| Defendants. | ) |

### M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Plaintiffs' Motion for a Preliminary Injunction.  For the following reasons, the Court will deny Plaintiffs' Motion.

### I.  Background

M.S., a minor with cognitive and communication impairments including mental retardation, oral motor apraxia, and mild to moderate autism, has filed this action by and through his parents, Carl and Jacqueline Simchick.  M.S. alleges that the Fairfax County public school system failed to provide him with a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  According to the allegations of Plaintiffs' complaint, in October 2000, the Simchicks expressed their concern that the school system's proposed level of speech and language

services, lack of one-on-one instruction, and lack of sign language instruction for M.S. was denying him a FAPE.  After the school system developed an individualized education program ("IEP") for M.S. for the 2001-2002 school year, the Simchicks withheld their consent to the IEP based on this concern.

In December 2001, the Simchicks arranged for an independent educational evaluation of M.S. at their own expense.  A private program at Lindamood-Bell Center ("LMB") was recommended at that time to address M.S.'s communication difficulties.  When the school system subsequently proposed an IEP for the 2002-2003 school year, the Simchicks rejected the IEP and unilaterally enrolled M.S. at LMB.  According to the Simchicks, the school system refused to consider their proposal for M.S.'s placement and did not offer any other placement options.

On June 1, 2004, the Simchicks requested a hearing to seek reimbursement for their unilateral placement of M.S. in the LMB program and also to have M.S.'s future educational placement determined.  An administrative hearing occurred during October and November of 2004 which included the testimony of sixteen witnesses over seven full days.  On January 6, 2005, a hearing officer found that the school system's IEPs did not provide sufficient one-on-one instruction to M.S.  Nevertheless, the hearing officer denied the Simchicks' claim for reimbursement of

their expenditures at LMB, finding that LMB was not reasonably calculated to give M.S. educational benefits.

The staff of Fairfax County Public Schools convened a new IEP meeting for M.S. following the hearing officer's determinations.  The staff developed and proposed on April 17, 2005 a new IEP providing, according to the staff, a comprehensive special education program consistent with the hearing officer's directives.  This program included daily one-on-one instruction.  Plaintiffs again rejected this proposal, and M.S. remained at LMB.

On December 20, 2005, the Simchicks filed suit against the Fairfax County School Board, Fairfax County Public Schools ("FCPS"), the Virginia Department of Education, the Virginia Board of Education, and several individuals in their individual and official capacities.  The Virginia Board Of Education, Virginia Department Of Education, and two individual Defendants filed a motion to dismiss on January 9, 2006.  The Fairfax County School Board and four individual Defendants filed a motion to dismiss on January 17, 2006.

On February 6, 2006, Plaintiffs filed a Motion for a Preliminary Injunction ordering Defendants Fairfax County School Board, Fairfax County Public Schools, Virginia Department of Education, and Virginia Board of Education to pay Plaintiffs'

current unilateral educational placement, pending further proceedings.  This Motion is currently before the Court.

## II.  Standard of Review

The issuance or denial of a preliminary injunction "is committed to the sound discretion of the trial court."  *Quince Orchard Valley Citizens Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  Under the test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest.  *See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193-96 (4th Cir. 1977).  No single factor can defeat a motion for a preliminary injunction.  Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered."  *Blackwelder Furniture*, 550 F.2d at 196.

When applying the four-factor test, the Court must first balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted."  *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).  The plaintiff must demonstrate that the harm is "'neither remote nor

speculative, but actual and imminent.'" *Id.* (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).

Once the court finds that the harm to the plaintiff is actual and imminent, it should proceed to balance this harm against the harm to the defendant if the preliminary injunction issues. *See id.* The district court then determines the likelihood of success on the merits on a sliding scale as follows:

> If, after balancing [the likelihood of harms], the balance "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted "if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359)).

Finally, after balancing the hardships, the Court must consider the public interest. *See Manning*, 119 F.3d at 264.

### III. Analysis

Plaintiffs seek from this Court a preliminary injunction ordering the listed Defendants to pay for Plaintiffs' current unilateral education placement, pending further proceedings. Plaintiffs argue that in the absence of such an order, M.S.'s parents will be unable to fund that unilateral educational placement, and M.S. will subsequently go without an

appropriate education.  To support the Motion, Plaintiffs assert that M.S. will suffer an irreparable harm of denial of an appropriate education because Plaintiff's parents have incurred extraordinary debt in paying for LMB and have exhausted all possible sources of credit.  Plaintiffs allege that the named Defendants will not suffer significant harm given that the burdens are merely financial.  Plaintiffs claim to have a high likelihood of succeeding on the merits considering the allegedly erroneous legal standards utilized by the hearing officer, and they assert that public policy considerations require that M.S. be provided the public funding necessary to continue his unilateral placement during the balance of this litigation.

In response, the Defendants deny that Plaintiffs would suffer irreparable injury without this preliminary injunction. Specifically, FCPS highlights that since April of 2005, the School Board has offered to Plaintiffs a program that complies fully with the hearing officer's order - impliedly, a program that qualifies as an appropriate education.  Further, the possibility of future financial distress does not justify irreparable harm, especially when the payments are used toward a program that is not classified as a school and from which M.S. has not benefitted in the past.  Additionally, the Defendants question Plaintiffs' likelihood of success on the merits largely due to the extensive findings of the hearing officer.

The Court is not persuaded that Plaintiff will suffer irreparable injury should this Court decline to grant an injunction. The hearing officer emphasized in the report that judging on the measures by which LMB critiques itself, M.S. has made no improvement and did not progress at all during his tenure. These conclusions, along with an extensive review of the particular aspects of LMB that are not meeting M.S.'s needs which include a lack of peer interaction, led the hearing officer to determine that LMB did not provide M.S. with an appropriate education, even with the related services provided by Plaintiff's parents.

Administrative findings of fact by hearing officers are considered "prima facie correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it. *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)" *County Sch. Bd. v. Z.P.*, 399 F.3d 298, 304 (4th Cir. 2005). "The hearing officer's conclusions of law, however, merit no such deference; the court draws its own legal conclusions de novo." *Alexis v. Bd. of Educ. for Balt. County Pub. Schs*, 286 F. Supp. 2d 551, 556 (D. Md. 2003) (citing *Doyle*, 953 F.2d at 105). Plaintiffs are correct in noting that the finding of the hearing officer that FCPS failed to offer M.S. an appropriate education from 2002-2005 is entitled to great weight. However, the irreparable injury element looks to the injuries

that Plaintiffs would sustain from the present time to the conclusion of this litigation.  The hearing officer's findings obviously do not comment on the appropriateness of FCPS's most recent IEP proposal applicable to M.S. currently.  Therefore, the comment on the past IEPs is irrelevant to the preliminary injunction determination.

Plaintiffs ask this Court to disregard the hearing officer's findings concerning the benefits offered to M.S. by LMB when contemplating the preliminary injunction.  Specifically, Plaintiffs contend that the hearing officer's use of "retrospective" analysis of M.S.'s placement at LMB rather than the "prospective" analysis required by IDEA erroneously led to the conclusion that LMB was not offering appropriate educational benefits.  While use of these conclusions may not be appropriate in determining the likelihood of Plaintiffs' success on the merits, this information is clearly relevant to whether Plaintiffs will suffer irreparable injury if financial situations required M.S.'s departure from the LMB program.  The hearing officer clearly found that M.S. did not progress at all during his tenure at LMB and that his disabilities were too challenging for LMB's curriculum.  The lack of peer interaction was found to be detrimental to M.S., as was the lack of program attention to functional and vocational skills.  These factual findings suggest that M.S. would not be irreparably harmed if confronted with

financial hardships that would prevent him from attending this program - a program from which he is not benefitting. Irreparable injury analysis is inherently prospective, considering what injuries Plaintiffs may incur should M.S. be removed from LMB. These findings concerning his development at LMB are certainly instructive in predicting that answer.

Finding no irreparable injury is especially warranted in light of the alternative Plaintiffs would face should the Simchicks' financial situation require M.S. to leave LMB. FCPS created a revised IEP in April of 2005 in light of the hearing officer's report. Without passing on the ultimate merits of the 2005 IEP, the Court acknowledges the expanded nature of the educational offerings. Plaintiff's parents are clearly dissatisfied with the extent of one-on-one instruction that the new IEP provides. However, the new IEP offers more one-on-one instruction than past IEP proposals in a package of learning opportunities specifically tailored to M.S. Plaintiffs' objection to one aspect of the program cannot legitimize an order requiring FCPS to pay for educational services that have been deemed ineffective for M.S.'s needs.

Finally, the plaintiff must demonstrate that the harm is "'neither remote nor speculative, but actual and imminent.'" *Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales,* 926 F.2d at 359). Putting aside the argument that financial harm is

oftentimes not considered irreparable, Plaintiff has offered little to prove the imminence of the harm.  While the financial debt of the Simchicks' is significant and ever-increasing, there is no showing that financial resources are certain to dissipate in the immediate future.

   Given the Court's finding that no irreparable injury would result upon denying this Motion, there is no need to extensively evaluate the remaining three elements of the preliminary injunction test.  The Court will abstain from commenting at length on Plaintiffs' likelihood of success on the merits.  It is sufficient to note that Plaintiff would have to make an extraordinary showing of success given the lack of irreparable injury, and they are prohibited from doing so simply on the basic findings of the hearing officer's report.  In light of the fact that "[t]he burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits," this Court will deny Plaintiffs' Motion for a Preliminary Injunction.  *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984).

## **IV. Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for a Preliminary Injunction. An appropriate Order will issue.

March_20_, 2006  _____/s/_____
Alexandria, Virginia            James C. Cacheris
                      UNITED STATES DISTRICT COURT JUDGE