IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| M.S. and JACQUELINE SIMCHICK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | ) | 1:05cv1476(JCC) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| VIRGINIA OFFICE FOR PROTECTION AND ADVOCACY, | ) | |
| | ) | |
| Amicus Curiae. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on two separate
Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure.  For the following reasons, the Court will
grant the local defendants' Motion in part and deny it in part,
and the Court will grant the state defendants' Motion.

**I.  Background**

M.S., a minor with cognitive and communication
impairments including mental retardation, oral motor apraxia, and
mild to moderate autism, has filed this action by and through his
parents, Carl and Jacqueline Simchick.  M.S. alleges that the
Fairfax County public school system failed to provide him with a
free appropriate public education ("FAPE") as required by the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

§ 1400 *et seq.*  Jacqueline Simchick has also individually joined in this action.  According to the allegations of Plaintiffs' complaint, the Simchicks strove for several years to ensure that M.S. received a FAPE in the Fairfax County public school system. The Simchicks expressed concern specifically about the school system's proposed level of speech and language services, lack of one-on-one instruction, and lack of sign language instruction.

In December 2001, the Simchicks arranged for an independent educational evaluation of M.S. at their own expense. A private program at Lindamood-Bell ("LMB") was recommended at that time to address M.S.'s communication difficulties.  When the Fairfax County school system subsequently proposed an individualized education program ("IEP") for the 2002-2003 school year, the Simchicks rejected the IEP, unilaterally enrolled M.S. at the LMB program, and requested that the school system reimburse them for M.S.'s education at LMB as well as other privately provided services.  According to the Simchicks, the school system refused to consider their proposal for M.S.'s placement and did not offer any other placement options.

On December 26, 2002, Mrs. Simchick was charged with violating Virginia's compulsory school attendance statute.  Mrs. Simchick was found not guilty on that charge, and in March 2003, the Simchicks asked the Fairfax County School Board to investigate what they believed to be retaliation.  The School

Board did not conduct an investigation.  On June 1, 2004, the Simchicks requested a hearing to seek reimbursement for their unilateral placement of M.S. in the LMB program and to have M.S.'s future educational placement determined.  During the administrative proceedings, they also asserted a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, based on the charges filed against Mrs. Simchick under the Virginia compulsory attendance statute.

On January 6, 2005, a hearing officer found that the school system's IEPs did not provide sufficient one-on-one instruction to M.S.  Nevertheless, the hearing officer denied the Simchicks' claim for reimbursement of their expenditures at LMB, finding that LMB was not reasonably calculated to give M.S. educational benefits.  The hearing officer ordered the Fairfax County school system to provide M.S. with an education including private sign-language instruction, private speech and language instruction, and compensatory education.  The hearing officer also concluded that Mrs. Simchick's Rehabilitation Act claim was time-barred and unsupported by the evidence.

After unsuccessfully seeking implementation of the favorable portions of the hearing officer's decision, Plaintiffs filed the instant action against the Fairfax County School Board, Fairfax County Public Schools,[1] and several individuals involved

---

[1] The School Board and Fairfax County Public Schools are hereinafter collectively referred to as the local education agency or LEA.

in the administration and operation of the Fairfax County public school system.[2]  Plaintiffs have also filed a claim against the Virginia Board of Education ("VBOE"), the Virginia Department of Education ("VDOE"),[3] and two state officials.[4]

The Simchicks' complaint asserts seven claims for relief.  Count I seeks reversal of the adverse portions of the hearing officer's decision.  Count II alleges discrimination in violation of 42 U.S.C. § 12132, a portion of the Americans with Disabilities Act ("ADA").  Count III alleges a claim for retaliation in violation of 42 U.S.C. § 12203, another ADA provision.  Count IV asserts claims for exclusion, denial of benefits, discrimination, and retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Count V alleges a claim pursuant to 42 U.S.C. § 1983 that the LEA and the local individual defendants deprived M.S. and Mrs. Simchick of their rights under the IDEA.  Count VI alleges a similar claim against the LEA only.  Count VII asserts a claim pursuant to § 1983 against all defendants for failure to implement the hearing

---

[2]These defendants are Jack Dale, Joyce Suydam, Eleanor Barnes, and Martin Humbertson.  Plaintiffs have sued these defendants in both their individual and official capacities.  These defendants will hereinafter be referred to collectively as the individual local defendants.

[3]The VBOE and VDOE are hereinafter collectively referred to as the state education agency or SEA.

[4]These defendants are Jo Lynne Demary, the State Superintendent of Public Instruction, and Judith Douglas of the VDOE.  Plaintiffs have sued these defendants in both their official and individual capacities.  These defendants will hereinafter be referred to collectively as the individual state defendants.

officer's January 6, 2005 decision.  The local defendants have filed a Motion to dismiss Count I insofar as it is alleged against the individual local defendants[5] and to dismiss Counts II through VII in their entirety.  The state defendants have also filed a Motion to dismiss Count VII, the only claim asserted against them.  These Motions are currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

---

[5]It is unclear whether the Simchicks' complaint alleges a claim against the individual defendants as to Count I.  The Simchicks do not disagree with the local defendants' contention that Count I should be dismissed to the extent it alleges a claim against the individual defendants.  Accordingly, the Court will dismiss Count I insofar as it alleges a claim against Jack Dale, Joyce Suydam, Eleanor Barnes, and Martin Humbertson.

-5-

require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

### III.  Analysis

#### A.  Fairfax County Public Schools

Plaintiffs have named as a defendant an entity referred to in the complaint as "Fairfax County Public Schools."  The local defendants claim that this named defendant is a non-entity and, as such, should be dismissed as a party.  Plaintiffs counter that Fairfax County Public Schools was the named party in the administrative proceedings below and that it has the trappings of a legal entity, including letterhead and a website.  As such, Plaintiffs argue that dismissal would be inappropriate at this time.  Despite the circumstances that Plaintiffs cite, however, it is clear that Fairfax County Public Schools does not have the capacity to sue or be sued.

In Virginia, the governance of each school division is vested in that division's school board.  Va. Code § 22.1-28. Every such school board has been declared a corporate body and has been vested with the power to sue and be sued.  Va. Code § 22.1-71.  As such, the Fairfax County School Board is the only local entity empowered to govern the Fairfax County public school system and is the only entity that has the authority to sue and be sued in connection with such governance.  Plaintiffs have not cited, and this Court's own research has not produced, any

authority declaring Fairfax County Public Schools a corporate body or vesting in it the power to sue and be sued.  Absent this express grant of authority, a civil action cannot lie against Fairfax County Public Schools.  *See Umhey v. County of Orange, New York*, 957 F. Supp. 525, 531-32 (S.D.N.Y. 1997) (dismissing a § 1983 claim against a county Board of Ethics where the Board was merely a subunit of the county with no separate capacity to sue or be sued).  Thus, despite its trappings, Fairfax County Public Schools will be dismissed as a defendant from the instant suit.

B.  Counts II, III, and IV

Based on the alleged denial of M.S.'s FAPE and the charges filed against Mrs. Simchick under the Virginia compulsory attendance statute, Plaintiffs have alleged a variety of claims for exclusion, denial of benefits, discrimination, and retaliation under the ADA and Section 504 of the Rehabilitation Act.  The local defendants argue that each of these claims, Counts II, III, and IV, are time-barred, have been procedurally defaulted, and should be dismissed for failure to state a claim.

1.  The Individual Local Defendants

Counts II, III, and IV each assert claims against the individual local defendants in both their individual and official capacities.  The Fourth Circuit has held that the ADA does not permit actions against individual defendants who do not qualify as "employers" under Title VII.  *See Baird v. Rose*, 192 F.3d 462,

-7-

471-72 (1999).  Furthermore, this Court has previously stated that defendants will not be subject to individual liability under the ADA or Section 504 of the Rehabilitation Act.  *See Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999).

Insofar as the individual local defendants are sued in their official capacities, the Court notes that "suits against officers of an entity generally represent only another way of pleading a suit against the entity of which the officer is an agent." *Bracey*, 55 F. Supp. 2d at 420.  In *Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004), the Fourth Circuit affirmed the dismissal of "official capacity" claims brought under 42 U.S.C. § 1983, characterizing the claims as "duplicative" claims that were, in essence, filed against the government agency.  *Id.* at 783.  Because the agency is named as a defendant here, the Court will dismiss Counts II, III, and IV to the extent that they allege claims against the individual local defendants, both in their official and individual capacities.

### 2.  Statutes of Limitations

The Rehabilitation Act contains no statute of limitations, and so the limitations period must be derived from the appropriate state law.  According to the Fourth Circuit, the Virginia Rights of Persons with Disabilities Act provides the appropriate statute of limitations for a Rehabilitation Act claim.  *See Wolsky v. Medical College of Hampton Roads*, 1 F.3d

-8-

222, 225 (4th Cir. 1993).  That limitations period is one year. Va. Code. § 51.5-46(B).

The ADA likewise contains no statute of limitations. In *Childress v. Clement*, 5 F. Supp. 2d 384 (E.D. Va. 1998), this Court recognized that "[t]he ADA was closely modeled on the Rehabilitation Act," and concluded that "[b]ecause the two federal statutes are so similar, the Fourth Circuit's reasoning in *Wolsky* regarding the Rehabilitation Act extends to the ADA." *Id.* at 388.  For this reason, the one-year limitations period set forth in the Virginia Rights of Persons with Disabilities Act, Va. Code § 51.5-46(B), applies to ADA claims.

Plaintiffs' Rehabilitation Act claims and ADA claims are subject to an exhaustion of administrative remedies requirement to the extent they seek relief that is also available under the IDEA.  *See* 20 U.S.C. § 1415(l); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 51-52 (1st Cir. 2000).  Because of this exhaustion requirement, Plaintiffs argue that their claims should be subject to the two-year limitations period that exists under the IDEA, rather than the normal one-year periods set forth above.  Under the IDEA, an aggrieved party must request a due process hearing within two years of the date he or she knew or should have known about the alleged action forming the basis for the complaint.  20 U.S.C. § 1415(f)(3)(C).  This limitations period is subject to state statutes of limitations, however,

-9-

where the state has an explicit time limitation for requesting a hearing. *Id.* The Virginia Rights of Persons with Disabilities Act provides that explicit time limitation for ADA and Rehabilitation Act claims. Furthermore, the IDEA cannot be construed "to restrict or limit the rights, *procedures*, and remedies available" under the ADA or Rehabilitation Act. 20 U.S.C. § 1415(l) (emphasis added). Thus, the one-year statute of limitations must be applied to Plaintiffs' ADA and Rehabilitation Act claims.

Accrual of a civil rights claim is a question of federal law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). A civil rights claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id.* In this case, two injuries form the basis of Plaintiffs' ADA and Rehabilitation Act claims: the denial of a FAPE for M.S. and the state compulsory attendance charges filed against Mrs. Simchick. With respect to the first injury, a claim based on a denial of a FAPE accrues when a parent rejects a proposed IEP as inadequate or withdraws a child from school. *See R.R. v. Fairfax County Sch. Bd.*, 338 F.3d 325, 332-33 (4th Cir. 2003). Plaintiffs' claims based on FAPE denial therefore accrued, at the latest, on June 11, 2002, the date when they rejected the proposed ninth grade IEP. As for the claims based on the truancy charges, the Court notes that the charges were filed on December 26, 2002, and

that Mrs. Simchick was found not guilty on January 27, 2003.
Accordingly, January 27, 2003 is the latest possible date on
which any claims based on the truancy charges accrued.

Plaintiffs did not request an administrative hearing to
adjudicate their claims until June 1, 2004.  This was outside of
the one-year limitations period for any ADA or Rehabilitation Act
claims based on the denial of a FAPE or the truancy charges.
While this requires dismissal of Mrs. Simchick's claims, M.S.'s
claims tolled during his minority.  *See* Va. Code § 8.01-229(A).
Accordingly, the one-year statute of limitations does not bar
M.S.'s claims under the ADA and the Rehabilitation Act.

The local defendants argue that the Virginia minority
tolling provision is inapplicable to the present case because the
Virginia Rights of Persons with Disabilities Act does not
expressly incorporate the tolling statute.  The Court disagrees.
The minority tolling provision applies "[e]xcept as otherwise
specifically provided in . . . other provisions of this Code."
Va. Code § 8.01-229(A).  The Virginia Rights of Persons with
Disabilities Act does not specifically provide for its exclusion
from the minority tolling rule.  Furthermore, the Fourth Circuit
has recognized that Va. Code § 8.01-229(A) applies to toll the
Virginia statute of limitations imposed on Rehabilitation Act
claims.  *See J.S. v. Isle of Wight County Sch. Bd.*, 402 F.3d 468,
473 n.8 (4th Cir. 2005).  The minority tolling rule set forth in

Va. Code § 8.01-229(A) therefore applies to the case *sub judice*, and the statute of limitations does not bar M.S.'s claims.

### 3.  Exhaustion of Administrative Remedies

The local defendants also argue that M.S. did not exhaust his administrative remedies with respect to his claims under the ADA and the Rehabilitation Act.  The IDEA imposes the following requirement:

> [B]efore the filing of a civil action under [the ADA and Rehabilitation Act] *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).  By its plain terms, the IDEA "does not require exhaustion where the relief sought is unavailable in an administrative proceeding."  *W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995).  In the case *sub judice*, M.S. is seeking compensatory and exemplary damages for the alleged ADA and Rehabilitation Act violations.  Such relief is not available in an administrative proceeding under the IDEA.  *See Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999); *W.B.*, 67 F.3d at 496.  Accordingly, M.S. was not required to exhaust his ADA and Rehabilitation Act claims.[6]

---

[6]Since the March 3, 2006 hearing on this Motion, the parties have filed several supplemental letters regarding the possible existence of cause for Plaintiffs' failure to press their ADA and Rehabilitation Act claims in the administrative proceedings.  While the Court has read each of these letters, the positions presented therein have not factored into the Court's decision. Even if the Court were to assume that Plaintiffs defaulted, without cause, their ADA claims and any Rehabilitation Act claims other than those based on

-12-

## 4.  Failure to State a Claim

The local defendants also argue that Plaintiffs'
allegations are insufficient to state claims under the cited
portions of the ADA and Section 504 of the Rehabilitation Act.
Count II is based on 42 U.S.C. § 12132, which provides that "no
qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the
benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity."
M.S. sets forth a variety of factual allegations regarding the
denial of his FAPE.  The complaint also alleges that "[s]uch
exclusion from participation, denial of benefits, discrimination
came in whole or in part by reason of M.S.'s disability."
(Compl. ¶ 141.)  The Court will find these allegations to be
sufficient to survive the local defendants' Motion to dismiss.

Count IV is based on Section 504 of the Rehabilitation
Act, 29 U.S.C. § 794.  The elements of a Section 504 claim are
similar to those of a claim under Section 12132 of the ADA.  In
addition to the elements of a Section 12132 claim, a plaintiff
seeking to establish a violation of Section 504 in the special
education context must show that the discrimination occurred
"solely by reason of her or his disability," 29 U.S.C. § 794(a),

---

the truancy charges, there is no requirement of administrative exhaustion to
the extent Plaintiffs seek compensatory and exemplary damages, as explained
above.

and must demonstrate the existence of "either bad faith or gross misjudgment." *See Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998).  M.S. sets forth sufficient allegations to survive the Motion to dismiss.  (*See* Compl. ¶¶ 149-150.)

Count III sets forth a claim for relief under 42 U.S.C. § 12203.  That section prohibits retaliation, interference, coercion, or intimidation of a person because his participation in activity protected by the ADA.  *See* 42 U.S.C. § 12203(a), (b). Count III was largely based on Mrs. Simchick's allegation that the local defendants filed retaliatory criminal charges against her.  Because this claim is time-barred, however, what remains is M.S.'s claim that the local defendants denied him a FAPE as a retaliatory action for his complaints that he was not receiving a FAPE.  This circular allegation is insufficient to state a claim under 42 U.S.C. § 12203.

Accordingly, the Court will dismiss Counts II, III, and IV to the extent that they allege claims against the individual local defendants.  The Court also finds that Counts II, III, and IV are time-barred.  Because the statute of limitations tolled with respect to M.S., however, the Court will deny the local defendants' Motion insofar as it seeks dismissal of M.S.'s claims in Counts II and IV.  Finally, the Court will dismiss Count III for failure to state a claim.

-14-

B.  Counts V and VI

       Count V alleges a claim against the LEA and the individual local defendants for deprivation of M.S.'s and Mrs. Simchick's IDEA rights.  Count VI alleges a similar claim against the LEA only.  Both claims have been filed pursuant to 42 U.S.C. § 1983.  The Fourth Circuit has squarely held that a party may not sue under 42 U.S.C. § 1983 for an IDEA violation.  *See J.S.*, 402 F.3d at 479; *Sellers*, 141 F.3d at 529.

       Plaintiffs argue that *Sellers* and *J.S.* are distinguishable, in that the defendant school districts in both cases acknowledged liability under the IDEA and settled the claims.  *See J.S.*, 402 F.3d at 470; *Sellers*, 141 F.3d at 526. Plaintiffs also point out that *J.S.* and *Sellers* both involved mere denials of FAPE, *see J.S.*, 402 F.3d at 472; *Sellers*, 141 F.3d at 529, whereas Plaintiffs allege abuse of government power. Both attempts to distinguish these cases are unavailing.  The rule announced in *Sellers* and reaffirmed in *J.S.* is based on "Congress's intent that disabled children pursue claims to a free appropriate public education solely through the remedial mechanisms established by the statute."  *Sellers*, 141 F.3d at 529.  Essentially, the Fourth Circuit was concerned with preventing an "end run" around the comprehensive procedures provided by the IDEA to remedy violations of its own requirements.  *See J.S.*, 402 F.3d at 480.  Plaintiffs' factual

-15-

distinctions do not remove that concern from the present case.
Accordingly, *Sellers* and *J.S.* are applicable and require
dismissal of Counts V and VI.

C.   Count VII

        Count VII asserts another claim under 42 U.S.C. § 1983,
this time against all local and all state defendants, for the
alleged refusal to implement the hearing officer's January 6,
2005 decision.  Plaintiffs claim that Defendants' failure to
implement this decision constituted a deprivation of their rights
under the IDEA.

        The Fourth Circuit has established one exception to the
above-stated general rule that § 1983 does not provide an
enforcement mechanism for IDEA rights.  In *Robinson v.
Pinderhughes*, 810 F.2d 1270 (4th Cir. 1987), the Fourth Circuit
held that the plaintiffs properly asserted a § 1983 claim for a
violation of their rights under the Education of the Handicapped
Act ("EHA"), the precursor to the IDEA, where the school system
failed to implement the final order of a hearing officer.  *Id.* at
1275.  This decision was based on the fact that the EHA did not
contain any provision for the enforcement of final administrative
orders.  *Id.* at 1273.  In this case, however, Plaintiffs have not
yet obtained a final administrative order, and the IDEA provides
an enforcement remedy for the portions of the hearing officer's

-16-

order that are favorable to them.  As such, the *Robinson* exception is inapplicable to the case at bar.

Under the IDEA, a hearing officer's order is final unless either party to the administrative hearing appeals the order.  *See* 20 U.S.C. § 1415(i)(1)(A).  In Virginia, a party may appeal a hearing officer's decision by filing a civil action in federal district court.  *See* 8 V.A.C. § 20-80-76.O.1.  That is precisely what Plaintiffs have done here.  Because Plaintiffs seek this Court's review of the adverse portions of the hearing officer's decision, the decision is not final.

Despite this express limitation on the *Robinson* exception, Plaintiffs argue that the IDEA obligated Defendants to enforce the hearing officer's decision, and that Defendants' failure to do so gives rise to a § 1983 claim.  The Court agrees that the hearing officer's decision imposed upon Defendants an obligation to enforce the portions of the order that modified M.S.'s educational placement.  Nevertheless, in light of *Robinson*, this obligation cannot form the basis of a § 1983 claim.

The IDEA's "stay-put" provision states, in pertinent part, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ."  20

-17-

U.S.C. § 1415(j).  Federal regulations detail the circumstances

in which an agreement between the parents and the LEA or state is

presumed:

> If the decision of a hearing officer in a due process
> hearing conducted by the SEA or a State review official
> in an administrative appeal agrees with the child's
> parents that a change of placement is appropriate, that
> placement must be treated as an agreement between the
> State or local agency and the parents for purposes of
> paragraph (a) of this section.[7]

34 C.F.R. § 300.514(c).  In other words, a new placement imposed

by a hearing officer becomes the educational placement" under the

IDEA's "stay-put" provision if the hearing officer agrees with

the parents that a change in placement is appropriate.

The state defendants argue that the hearing officer did

not order a "change of placement" and did not agree with M.S.'s

parents that a change of placement was appropriate.  In his

January 6, 2005 decision, the hearing officer found that the IEPs

developed by the Fairfax County school system were inadequate due

to their failure to provide sufficient and reliable one-on-one

instruction.  The hearing officer ordered the school system to

provide reliable, intensive one-on-one instruction in M.S.'s

academic studies.  The state defendants would characterize this

as an order that "the IEP be implemented with some modification

in the methodology of providing services" rather than a "change

---

[7]34 C.F.R. § 300.514(a), which is referred to in the quoted provision,
contains language substantially similar to the quoted portion of 20 U.S.C.
§ 1415(j).

in placement." (*See* State Def.'s Reply Mem. at 6.)  As the Fourth Circuit has instructed, however, "a change in 'placement' occurs when a school places the student in a setting that is distinguishable from the educational environment to which the student was previously assigned." *A.W. v. Fairfax County Sch. Bd.*, 372 F.3d 674, 681 (4th Cir. 2004).  The hearing officer ordered intensive one-on-one instruction that was not a part of the existing IEP.  This was distinguishable from the previous IEP and thus constituted a "change in placement."

The hearing officer's decision also concluded that the Simchicks were not entitled to reimbursement for the private placement at LMB, finding that the LMB placement was not reasonably calculated to enable M.S. to receive educational benefits.  Both the state and local defendants would characterize this portion of the decision as a disagreement over the appropriateness of a change in placement, but this characterization is incorrect.  The hearing officer may have disagreed with the Simchicks regarding the appropriateness of a specific placement, but he nonetheless agreed with them that a change in placement was appropriate.  Such agreement is all that is contemplated by 34 C.F.R. § 300.514(c), and for this reason, the hearing officer's order became M.S.'s educational placement under 20 U.S.C. § 1415(j).

-19-

Thus, the hearing officer's order gave rise to an obligation on Defendants' part to implement, during the pendency of further proceedings, the portions of the order that modified M.S.'s educational placement.  However, Plaintiffs do not currently have a cause of action under § 1983 to enforce this obligation.  As stated above, the Fourth Circuit's decision in *Robinson* was premised on the fact that the statutory scheme did not provide an enforcement mechanism for a final administrative order.  *Robinson*, 810 F.2d at 1273-74.  That is not a concern here.  Count I of the instant action seeks review, pursuant to the IDEA, of the portions of the hearing officer's decision that are adverse to Plaintiffs.  The IDEA specifically empowers this Court, in its review, to "hear additional evidence at the request of a party" and to "grant such relief as the court deems appropriate."  20 U.S.C. § 1415(i)(2)(C).  In this regard, the Court's review can include IEPs developed by the local defendants after the hearing officer issued his decision.  *See DeVries v. Spillane*, 853 F.2d 264, 266-67 (4th Cir. 1988).  The Court thus has the ability to review the local defendants' actions to ensure that they complied with the local defendants' obligation to implement the portions of the hearing officer's order that modified M.S.'s educational placement.[8]  Given the existence of a

---

[8]The local defendants have represented to the Court that they have developed a 2005-2006 school year IEP for M.S. that complies with all portions of the hearing officer's decision except for the hearing officer's reimbursement order.  While the Court will not take this representation into

remedy under the IDEA, the Court must dismiss the § 1983 claim against the local defendants.  *See J.S.*, 402 F.3d at 479-80.

The Virginia Office for Protection and Advocacy ("VOPA"), as *amicus curiae*, has pointed to the state defendants' obligation to enforce the hearing officer's order.  VOPA argues that the IDEA contains no mechanism by which a parent may seek relief against a SEA that refuses to enforce an administrative determination.  As such, according to VOPA, the Fourth Circuit's holdings in *J.S.* and *Sellers* do not foreclose a § 1983 claim against the state defendants.  Because this argument rests on a faulty premise, the Court disagrees.  In *Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997), the Fourth Circuit plainly stated that a SEA may be held liable under the IDEA where it has failed to assure compliance with the IDEA.  *Id.* at 952-53.  Thus, the IDEA provides a mechanism by which a court can review SEA actions to ensure consistency with the obligation to provide a FAPE. Accordingly, the Fourth Circuit's decision in *J.S.* requires dismissal of the § 1983 claim against the state defendants.  *See* 402 F.3d at 479-80.

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981), the Supreme Court held that where a federal statute contains its own "sufficiently

account for purposes of ruling on this Motion to dismiss, the Court notes that it will have the opportunity to review this IEP at a later stage in these proceedings should the parties present it as evidence.

comprehensive" enforcement mechanism, § 1983 relief is unavailable even in circumstances where a state may be in violation of a federal statute. *See id.* at 19-21.  In the instant case, the IDEA provides an enforcement mechanism for Plaintiffs' rights to have the hearing officer's order implemented.  This fact and the non-finality of the order stand in direct contrast to the situation addressed by the Fourth Circuit in *Robinson*.  Accordingly, Plaintiffs cannot state a § 1983 claim against the local defendants or the state defendants for failure to implement the hearing officer's decision.

## IV.  Conclusion

For the foregoing reasons, the Court will grant the local defendants' Motion to Dismiss in part and deny it in part. Furthermore, the Court will grant the state defendants' Motion to Dismiss.  Accordingly, Counts III, V, VI, and VII will be dismissed in their entirety.  Counts I, II, and IV will be dismissed to the extent that they allege claims against Fairfax County Public Schools and the individual local defendants. Finally, the portions of Counts II and IV in which Jacqueline Simchick asserts claims for relief will also be dismissed.  An appropriate Order shall issue.


March 20, 2006                    _____/s/_____
Alexandria, Virginia             UNITED STATES DISTRICT COURT JUDGE

-22-